UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
UNITED STATES OF AMERICA,

                    Plaintiff,

   -against-

UNITED STATES CURRENCY
IN THE AMOUNT OF THIRTY-
FOUR THOUSAND FIVE
HUNDRED DOLLARS AND
NO CENTS ($34,500.00) MORE
OR LESS, AND ALL PROCEEDS
TRACEABLE THERETO,

                   Defendants.
----------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

    ★  MAY – 8 2002  ★

BROOKLYN OFFICE

**VERIFIED COMPLAINT**
**IN REM**

CV 02 2786

Civil Action No. 02-

(_____, J.)
(_____, M.J.)  GARAUFIS, J.

          MANN, M.J.

Plaintiff, United States of America, by its attorney, Alan Vinegrad, United States

Attorney for the Eastern District of New York, Jennifer Schantz, Assistant U.S. Attorney, of

counsel, brings this complaint and alleges as follows:

## NATURE OF THE ACTION

1.     This is an action to forfeit and condemn to the exclusive use and benefit of

the United States of America the defendant United States currency, totaling, thirty-four thousand

five hundred dollars and no cents ($34,500.00), more or less, and all proceeds traceable thereto

(the "defendant funds") which were seized on June 6, 1998 from the person and carry on

baggage of David Caruso at John F. Kennedy International Airport, Queens, New York.

2.     Mr. Caruso failed to file a currency report while attempting to transport the

defendant funds which constituted currency in excess of ten thousand dollars ($10,000) outside

of the United States of America in violation of 31 U.S.C. §5316.

3.     The defendant funds are subject to forfeiture to the United States of

America in accordance with 31 U.S.C. §5317, as set forth more fully below, insofar as Mr.

Caruso failed to file a currency and monetary instrument report (the "CMIR form") while

attempting to transport the defendant funds outside of the United States of America in violation

of 31 U.S.C. § 5316.

## JURISDICTION AND VENUE

4.     Plaintiff brings this action <u>in rem</u> in its own right to forfeit and condemn

the defendant funds under 31 U.S.C. § 5317.

5.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1345 and

1355.

6.     Venue is proper in this district pursuant to 28 U.S.C. §§1355 and 1395(b).

## THE DEFENDANT FUNDS

7.     On or about June 6, 1998, officers of the United States Customs Service

("U.S. Customs") seized the defendant funds at John F. Kennedy International Airport, Jamaica,

New York from person and carry-on luggage of Mr. Caruso.

## FACTS

### The Seizure of Defendant Funds

8.     On June 6, 1998, Mr. Caruso arrived at John F. Kennedy International

Airport in preparation for boarding DL flight #140 from New York to Brussels and the Milan,

Italy.

9.     U.S. Customs inspectors stopped Mr. Caruso in the jetway while he was

attempting to board DL flight #140.

10.     The inspectors informed Mr. Caruso of the currency reporting

2

requirements of 31 U.S.C. §5316.

11.     The inspectors then provided Mr. Caruso with an Italian version of a Customs publication, explaining that all individuals leaving the United States of America who are carrying more than ten thousand dollars ($10,000) in currency or monetary instruments must file a report at the time of departure.

12.     After the inspectors informed Mr. Caruso of the currency reporting, Mr. Caruso advised the inspectors that he understood the currency reporting requirements.

13.     The inspectors then asked Mr. Caruso to declare all monies that he was transporting, including travelers' checks, money orders, monies in his checked baggage and all moneys being transported on behalf of others.

14.     Mr. Caruso declared that he was transporting $2,000 in U.S. currency.

15.     Mr. Caruso signed a U.S. Customs form, indicating that he was transporting a total of $2,000.00 in U.S. currency and monetary instruments out of the United States of America.

16.     The inspectors performed a pat-down search of Mr. Caruso and a search of Mr. Caruso's carry-on luggage.

17.     The inspectors found a total of $35,960.00 in United States currency in various envelopes in Mr. Caruso's carry-on baggage.

18.     These funds consisted of eight ten dollar bills (8), two hundred and forty-four twenty dollar bills (244), one hundred and fourteen fifty dollar bills (114) and two hundred fifty three one hundred dollar bills (253).

19.     The inspectors also found an additional $48.00 in United States Currency

3

in Mr. Caruso's pocket.

20.     Mr. Caruso was informed that he was in violation of the currency reporting requirements because he had failed to declare on the CMIR form the total amount of currency seized from his person, baggage, and effects by U.S. Customs was $36,008.00.

21.     The defendant funds were seized, and Mr. Caruso was arrested and transported to the U.S. Customs office for further processing.

22.     Federal prosecution was declined and Mr. Caruso was returned $1,508.00 for humanitarian reasons and released with all of his personal effects.

23.     The defendant funds, $34,500.00, were retained for forfeiture purposes.

**Administrative Proceedings**

24.     On or about June 29, 1998, U.S. Customs commenced an administrative forfeiture proceeding by sending Mr. Caruso a Notice of Seizure and Information which notified Mr. Caruso that the agency had seized the defendant funds.

25.     On or about July 16, 1998, Peter S. Herrick Esq., on behalf of Mr. Caruso, forwarded U.S. Customs an administrative petition for relief.

26.     In his petition, Mr. Caruso claimed that in 1998, he was in a partnership with his uncle Andrea Buono, and his cousin, Salvatore Buono, exporting three shipments of wearing apparel and picture frames from Italy to Miami, Florida (the "partnership").

27.     According to Mr. Caruso, the defendant funds were derived from the sale of this merchandise and were to be used to pay the partnership's suppliers.

28.     Mr. Caruso claimed that he was an unsophisticated traveler and that at the time of his departure from JFK Airport, he was unfamiliar with the currency reporting

4

requirements.

29.    On or about October 24, 1998, Customs contacted Mr. Herrick and requested that Mr. Caruso identify the individuals and entities to whom the partnership sold its merchandise.

30.    In response, Mr. Herrick and Mr. Caruso advised Customs that the members of the partnership sold their merchandise to various stores and Latin Americans throughout Miami-Dade County and Tampa and that Mr. Caruso did not have the names or addresses of the individuals who purchased the merchandise.

31.    In November 1998, Customs attempted to schedule an interview with Mr. Caruso.

32.    Through his counsel, Mr. Caruso refused to be interviewed.

33.    On or about December 17, 1998, Customs advised Mr. Herrick that it had denied Mr. Caruso's petition on the grounds that Mr. Caruso had failed to supply sufficient documentary proof of the partnership and income tax returns, and gave Mr. Herrick thirty days to supply the necessary documents.

34.    On or about January 4, 1999, Mr. Herrick filed a second petition where he claimed that he represented both Mr. Caruso and Mr. Caruso's uncle, Andrea Buono, but again failed to provide any documentation evidencing the legitimacy of the partnership's business.

35.    On or about June 4, 1999, Customs advised Mr. Herrick that it had denied the request for the immediate return of defendant funds on the grounds that Mr. Caruso and Mr. Buono had failed to supply sufficient documentary proof of the partnership and income tax returns, and gave Mr. Herrick thirty days to supply the necessary documents.

36.     On or about July 13, 1999, Mr. Herrick wrote to Customs, attaching certain documents, such as business cards and a sanitized copy of a Customs Report of Investigation, which he claimed demonstrated that Mr. Caruso and Mr. Buono were legitimate businessmen and that the source of the defendant funds was legitimate.

37.     On or about August 1999, Customs advised Mr. Herrick that it had rejected his request for the immediate return of defendant currency on the grounds that Mr. Caruso and Mr. Buono had failed to demonstrate any nexus between defendant funds and the partnership.

38.     Customs also advised Mr. Herrick to provide Customs with business documents, such as receipts or bills of sale, to demonstrate the legitimacy of defendant funds, and granted Herrick a final extension to submit significant documentation to substantiate his clients' claims.

39.     On or about September 23, 1999, Mr. Herrick sent Customs another letter repeating the statements he had made in his July 13, 1999 letter.

40.     On or about July 6, 2000, Customs advised Mr. Herrick that it had denied his request for relief and that Customs would immediately commence administrative forfeiture proceedings.

41.     On or about July 14, 2000, Mr. Herrick's office requested that Customs stay the administrative forfeiture proceedings.

42.     Customs advised Mr. Herrick that he could file a supplemental petition within thirty days, but upon failure to do so, Customs would send out the Final Administrative Action ("FAA") notice.

6

43. On or about September 15, 2000, Customs sent out a FAA notice to Mr. Caruso and an advertisement ran in the New York Post on October 2, 9 and 16, 2000.

44. On or about October 20, 2000, Mr. Herrick contacted Customs and advised them that he had never received a copy of the FAA and Customs faxed him a copy.

45. On or about October 24, 2000, Mr. Herrick again contacted Customs and advised them that he had not received the FAA notice and Customs advised him that they would give him until November 6, 2000 to either post a cost bond or prove his clients' indigence.

46. On or about October 25, 2000, Mr. Herrick advised Customs that Mr. Caruso was making a claim to stay the forfeiture proceedings under the guidelines of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA").

47. On or about November 8, 2000, Mr. Caruso's request for a stay was denied because the administrative forfeiture proceeding was commenced prior to August 23, 2000, the effective date of CAFRA.

48. On or about December 1, 2000, Customs advised Mr. Herrick that Mr. Caruso either had to post a cost bond or demonstrate his clients' indigence.

49. On or about December 8, 2000, Mr. Herrick advised Customs that his clients were unable to post bond because they are indigent and that this case falls under the CAFRA guidelines.

50. That same day, Customs again advised Mr. Herrick that Mr. Caruso's request for a stay was denied because the administrative forfeiture proceeding was commenced prior to the effective date of CAFRA and that Mr. Caruso either had to post a cost bond or to demonstrate his indigence.

7

51.   A new FAA notice was issued to Mr. Caruso and to Mr. Herrick and Customs ran an advertisement in the New York Post on January 1, 8 and 15, 2000.

52.   On or about January 25, 2001, Mr. Herrick advised Customs via facsimile that his clients were out of the country, were unable to post bond, and even if they did submit financial statements for a waiver of the bond, he doubted that Customs would be able to verify the information.

53.   Mr. Herrick requested that Customs "take it on faith" that his clients were unable to pay the cost bond and that Customs waive the bond requirement and refer the case to the United States Attorney.

54.   Customs contacted Mr. Herrick via telephone and advised him that Customs needed proof of indigency.

55.   On or about January 25, 2001, Mr. Herrick submitted a check in the amount of $3,450.000 made payable to Customs and he requested that the check be deposited into an interest bearing account along with defendant funds.

56.   He also requested that the case be immediately referred to the United States Attorney's Office instead of Customs' Associate Chief Counsel's office.

57.   Customs refused on the grounds that such a request was in violation of Customs' policies, and advised Mr. Herrick that he had until January 29, 2001 to withdraw his claim and cost bond.

58.   On January 27, 2001, Mr. Herrick submitted an Election of Proceedings form indicating his clients' desire to have the case handled judicially.

59.   On January 30, 2001, the cost bond was deposited.

## FIRST CLAIM FOR RELIEF

60.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 59 above.

61.     The defendant funds constitute monetary instruments in excess of $10,000.

62.     Mr. Caruso knowingly was about to transport defendant funds out of the United States of America at one time.

63.     Mr. Caruso failed to file a U.S. Customs report with respect to defendant funds in violation of 31 U.S.C. § 5316.

64.     As a result of the foregoing, the defendant funds are liable to condemnation and forfeiture to the United States of America, in accordance with the provisions of 31 U.S.C. §5317.

9

WHEREFORE, the plaintiff requests that a warrant of this Court be issued for the arrest of the defendant funds; that due notice of these proceedings are given to all interested persons; that the defendant funds be forfeited and condemned to the use of the United States of America; that the plaintiff be awarded its costs and disbursements in this action and for such other and further relief as this Court deems just and proper.

Dated:     Brooklyn, New York
           May 8, 2002


                        ALAN VINEGRAD
                        United States Attorney
                        Eastern District of New York
                        Attorney for Plaintiff
                        One Pierrepont Plaza, 14th Floor
                        Brooklyn, New York


                   By: _____
                        JENNIFER SCHANTZ (JS 9318)
                        Assistant U.S. Attorney
                        (718) 254-7035

10

## DECLARATION

I, Laura Rios, declare that I am a Inspector with the United States Customs

Service, and as such have knowledge of the facts underlying the above-entitled action; that I have

read the foregoing and know the contents thereof, and that the same is true of my own

knowledge; except as to those matters herein stated to be alleged upon information and belief,

and as to those matters I believe them to be true.

That the source of my information and the grounds of my belief are my

investigation of this matter, information supplied to me by other law enforcement agents, and the

official records and files of the United States of America.

I declare under penalty of perjury that the foregoing is true, to the best of my

knowledge, information, and belief.

Dated: _____Queens____, New York
       May _07_, 2002

_____
        Laura Rios